# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 09-2839

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of South Dakota. |
| David A. Jandreau, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: May 14, 2010
Filed: July 20, 2010

_____

Before BYE, MELLOY, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

In 2009, David Jandreau was indicted for engaging in a sexual act with a minor. Prior to trial, the government notified Jandreau that it would seek to admit DNA paternity evidence to prove that Jandreau was the father of the minor victim's child. Jandreau's motion to exclude this evidence was denied by the district court[1]. Jandreau was subsequently convicted and sentenced to 33 months imprisonment. Jandreau appeals the district court's evidentiary ruling and we affirm.

_____

[1]The Honorable John B. Jones, United States District Judge for the District of South Dakota.

I.

In early 2008, Jandreau, a Native American, was living with his ex-girlfriend in Wagner, South Dakota, a small town on the Yankton Sioux Indian Reservation. Jandreau's aunt, Jane Zephier, also lived in Wagner with her minor daughter, V.Z., and her daughter's 14-year-old friend, R.F. In February 2008, Jane made arrangements for Jandreau to babysit V.Z. and R.F. at her home while she stayed overnight at a hospital with her son. At the time, Jandreau was 25 years old.

Although Jandreau and R.F. presented conflicting accounts of the events that transpired that evening, the record is clear that a sexual encounter occurred between them. According to R.F., she and V.Z. spent the night drinking, eventually returning to Jane's house after midnight, after which R.F. went to sleep in Jane's bed. She awoke to Jandreau having sexual intercourse with her, although she testified that Jandreau did not force her to have sex. Jandreau admitted to having sex with R.F. but stated that she instigated the encounter. R.F. subsequently gave birth to a child on November 9, 2008, and identified Jandreau as the father.

Following a report from the Bureau of Indian Affairs (BIA) that a 15-year-old girl had recently given birth to a child, the BIA and FBI investigated Jandreau. In an interview with BIA and FBI agents, Jandreau admitted to having sex with R.F. Jandreau initially claimed that he believed R.F. to be 18 years old but later stated that he knew she was under 16. In January 2009, Jandreau was indicted for engaging in a sexual act with a minor between the ages of 12 and 16 in Indian country, in violation of 18 U.S.C. §§ 1153, 2243(a), and 2246(2). Prior to trial, Jandreau filed a motion in limine to exclude any DNA evidence that Jandreau was the father of the child born to R.F., arguing that he had admitted to the sexual encounter with R.F. and that paternity evidence would prejudice the jury against him. The government argued that it was entitled to prove the elements of its case as it saw fit and that the paternity evidence

was strong evidence the sexual encounter occurred. The district court denied Jandreau's motion and the case proceeded to trial.

At trial, Jandreau admitted to having sex with R.F. and testified that he did not know how old she was at the time, but believed she was at least 16 years old, contrary to his earlier statement that he knew she was under 16 years of age. R.F. testified that she and Jandreau had sex in February 2008. In addition, the government presented DNA paternity evidence that there was a 99.99999832% probability that Jandreau is the father of R.F.'s child. The jury convicted Jandreau and the district court sentenced him to 33 months imprisonment. This appeal followed.

II.

Jandreau appeals the district court's evidentiary ruling allowing the government to present DNA evidence proving that Jandreau was the father of the child born to R.F. He argues that, because he admitted to having sex with R.F., the DNA evidence was unrelated to any issue in the case and prejudiced the jury against him. See Fed. R. Evid. 403 (allowing a court to exclude otherwise relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice"). We review a district court's decision to admit DNA evidence for an abuse of discretion. See United States v. Johnson, 56 F.3d 947, 952 (8th Cir. 1995). We review a district court's interpretation and application of the Federal Rules of Evidence de novo. See United States v. Street, 531 F.3d 703, 708 (8th Cir.), cert. denied 129 S. Ct. 432 (2008).

Jandreau relies heavily on Old Chief v. United States, 519 U.S. 172 (1997). In Old Chief, the Supreme Court affirmed "the accepted rule that the prosecution is entitled to prove its case free from any defendant's option to stipulate the evidence away." Id. at 189. However, the Court created a narrow exception to this rule in cases where a defendant's "prior conviction is for an offense likely to support conviction on some improper ground." Id. at 191. In such cases, the district court should allow a

defendant to stipulate to the fact of the prior conviction and "abuses its discretion if it spurns such an offer." Id. at 174. The Court emphasized the narrowness of its holding, noting that "a defendant's Rule 403 objection offering to concede a point generally cannot prevail over the Government's choice to offer evidence showing guilt and all the circumstances surrounding the offense." Id. at 183.

We have previously noted that Old Chief is limited to cases involving prior felony convictions and upheld the traditional rule that a defendant cannot stipulate away the evidence against him. See, e.g., United States v. Becht, 267 F.3d 767, 774 (8th Cir. 2001) ("We believe the Old Chief Court made clear that, absent the unusual circumstance of prior criminal status, the Government is free to offer its evidence as it sees fit."); United States v. Hill, 249 F.3d 707, 711-13 (8th Cir. 2001) (holding that Old Chief does not require a court to accept a defendant's offer to stipulate to past crimes under Rule 404(b)); United States v. Gonzalez-Rodriguez, 239 F.3d 948, 952 (8th Cir. 2001) (holding that the district court did not abuse its discretion in refusing to let defendant stipulate that his residence was within 1000 feet of a school for purposes of his prosecution for methamphetamine possession under 21 U.S.C. § 860(a)); United States v. Barry, 133 F.3d 580, 582 (8th Cir. 1998) ("The law is clear in this Circuit that as a general rule, the government is not bound by a defendant's offer to stipulate." (quotation omitted)).

Given our precedent, Jandreau's argument is unpersuasive. The Old Chief exception to the general rule is a narrow one. Jandreau is unable to direct us to any case that has expanded it beyond cases dealing with prior convictions, and we decline to do so here.[2] The government was entitled to prove up its case with relevant

---

[2]Additionally, we note that Jandreau did not offer to stipulate to the fact of the sexual encounter, but rather testified that the encounter happened. Trial testimony is not subject to the same evidentiary weight as a stipulation, further removing this case from the Old Chief exception. See Old Chief v. United States, 519 U.S. 172, 186 (1997) ("Old Chief's proffered admission would, in fact, have been not merely

evidence, which included the paternity evidence at issue, and the district court did not abuse its discretion in admitting it.

III.

For the foregoing reasons, we affirm.

_____

---

relevant but seemingly conclusive evidence of the element."); see also Christian Legal Soc. Chapter of Univ. of Cal., Hastings College of Law v. Martinez, No. 08-1371, slip op. at 11 (U.S. June 28, 2010) ("[F]actual stipulations are 'formal concessions . . . that have the effect of withdrawing a fact from issue and dispensing wholly with the need for proof of the fact.'" (quoting 2 Kenneth S. Broun et al., McCormick on Evidence § 254, at 181 (6th ed. 2006)); 1 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 4:17 (3d ed. 2007) ("While an instruction cannot properly require a jury to find an element of a charged offense against a defendant in a criminal case, a stipulation can pave the way for an instruction that excuses the prosecutor from offering proof.").